[Cite as *In re J.G.*, 2018-Ohio-3981.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

In re J.G., K.W.

Court of Appeals No.  L-17-1311

Trial Court No.  JC 16253893

**DECISION AND JUDGMENT**

Decided:  September 28, 2018

* * * * *

Angela R. Russell, for appellee.

Adam H. Houser, for appellant.

* * * * *

**JENSEN, J.**

## Introduction

**{¶ 1}** Appellant, Jo.G., appeals the judgment of the Lucas County Court of

Common Pleas, Juvenile Division, granting a motion for permanent custody filed by

appellee, Lucas County Children Services ("LCCS"), thereby terminating her parental rights with respect to her children, J.G. and K.W. (collectively referred to as "the children").[1]

## A. Facts and Procedural Background

{¶ 2} This matter originated when LCCS received a referral in November 2015, in which it was alleged that appellant was assaulted by M.W. in the presence of J.G. and appellant's daughter, A.H.[2] Specifically, it was alleged that M.W. "choked mother, punched her, pushed her head into the wall and pointed a pistol at her in the presence of the children. It was reported that the children were found hiding in the neigbor's yard at 11:30 p.m." LCCS investigated the referral, which ultimately led to M.W. being charged with domestic violence and ordered to have no contact with appellant.

{¶ 3} Approximately three months later, LCCS received another referral alleging that appellant was involved in a domestic violence dispute with M.W. In this referral, it was reported that M.W. grabbed appellant in the face and slapped her in the eye. Appellant was seven months pregnant with K.W. at the time of this incident. When authorities arrived on the scene to investigate the incident, appellant refused to sign a statement or pursue criminal charges.

---

[1] The children's fathers, M.G. and M.W., did not file notices of appeal and are therefore not parties to this proceeding.
[2] A.H. was born on February 5, 1999, and was therefore an adult by the time of the permanent custody hearing. As such, the custody of A.H. is not an issue in this appeal.

2.

{¶ 4} Upon receiving the second referral, LCCS contacted appellant in an effort to institute a safety plan that would require either appellant or M.W. to leave the home while the referral was investigated. Appellant refused to cooperate with LCCS.

{¶ 5} Two days after it received the second referral, LCCS filed a complaint in dependency and neglect and a motion for a shelter care hearing with the juvenile court. After reciting the foregoing details concerning the two referrals it had received, LCCS requested an emergency shelter care hearing and an award of temporary custody of J.G. and A.H., to be followed by an adjudication hearing and a finding that J.G. and A.H. were dependent and neglected.

{¶ 6} A shelter care hearing was held before a magistrate on the day LCCS filed its complaint. Following the hearing, the magistrate found that placement of J.G. and A.H. in shelter care was required to protect them from immediate or threatened physical or emotional harm. The magistrate further found that LCCS made reasonable efforts, including the proposed safety plan that was rejected by appellant, to prevent the removal of J.G. and A.H. from the home. Ultimately, the magistrate awarded interim temporary custody to LCCS, ordered appellant to submit to substance abuse screening, and scheduled an adjudication hearing for April 19, 2016.

{¶ 7} On March 18, 2016, LCCS filed appellant's original case plan with a goal of reunification. The case plan services included domestic violence counseling, stable housing, substance abuse treatment, and a diagnostic assessment.

3.

**{¶ 8}** On April 12, 2016, LCCS filed an amended complaint in dependency and neglect. In its amended complaint, LCCS provided details concerning appellant's criminal history and added K.W., who was born on April 3, 2016, as an alleged dependent and neglected child. According to the amended complaint, K.W. was born with methadone in his system and was experiencing symptoms of withdrawal. As of the date of the filing of the amended complaint, appellant had sought treatment for substance abuse and was engaged in domestic violence survivors' treatment at Project Genesis. Additionally, appellant had completed the diagnostic assessment that was part of her original case plan.

**{¶ 9}** The adjudication and disposition hearing in this matter was held on April 19, 2016, and June 22, 2016. Following the hearing, the magistrate issued a decision in which she found the children to be dependent and neglected, and awarded temporary custody of the children to LCCS. The juvenile court issued its order adopting the magistrate's decision on July 26, 2016. In its order, the court found that LCCS had made reasonable efforts to prevent the removal of the children from the home. The court listed those efforts, which included substance abuse treatment, mental health treatment, domestic violence counseling, parenting, and housing services.

**{¶ 10}** Over the following ten months, appellant made some progress on her case plan services, completing domestic violence counseling. However, appellant failed to progress with her substance abuse issues. Following an annual review conducted by the

4.

court in February 2017, the court found that appellant had frequently changed substance abuse providers, impeding her progress. In its entry, the court noted that appellant "continues to test positive for various substances." The court also indicated that appellant had failed to obtain appropriate housing. Moreover, LCCS remained concerned about appellant's parenting habits after observing appellant during her supervised visits with the children.

{¶ 11} Due to appellant's lack of progress, LCCS filed its motion for permanent custody on May 11, 2017. In its motion, LCCS alleged that the children could not or should not be placed with either of their parents within a reasonable time and that permanent custody was in the children's best interest. LCCS also asserted that the children were in its temporary custody for 12 months out of a 22-month period, having entered into temporary custody on May 1, 2016, and so remaining until the date of the permanent custody motion.

{¶ 12} In support of its motion for permanent custody, LCCS asserted that appellant failed to comply with her case plan services. Specifically, LCCS stated that appellant continued to abuse substances, having tested positive for cocaine, opiates, fentanyl, barbiturates, benzodiazepine, and suboxone. LCCS also alleged that appellant failed to submit urine screens on a number of occasions, and rescinded medical releases that would have allowed LCCS to access appellant's health information in order to verify compliance with the substance abuse component of her case plan.

5.

{¶ 13} As to appellant's housing, LCCS asserted that appellant was evicted from her prior residence in April 2017, and was currently living with maternal grandmother, J.E. According to LCCS, a shooting occurred at J.E.'s home in late-April 2017, and there "have been significant concerns for maternal grandmother's behaviors."

{¶ 14} LCCS asserted further concerns with appellant based upon issues that arose with respect to appellant's visitations with the children. Specifically, LCCS alleged that appellant used profanity during her visits after being warned not to do so, and attempted to alter J.G.'s attitude toward her placement. LCCS also recounted an incident that occurred in November 2016, during which appellant and J.E. arrived unannounced at the children's caregiver's home and provoked a physical altercation with the caregiver's significant other, culminating in a misdemeanor assault charge against appellant. Ultimately, appellant's visits were terminated on March 24, 2017, because of "ongoing negative behaviors."

{¶ 15} A four-day hearing on LCCS's motion for permanent custody began on October 2, 2017. At the hearing, LCCS called several witnesses, as did J.E. Appellant did not call any witnesses on her behalf. At the conclusion of the hearing, the juvenile court took the matter under advisement.

{¶ 16} On November 17, 2017, the juvenile court announced its decision granting LCCS's motion for permanent custody. In its subsequent judgment entry, the court found, as it pertains to appellant, that the children could not and should be placed with

6.

either of the parents within a reasonable time pursuant to R.C. 2151.414(B)(1)(a), (E)(1), and (E)(2). Further, the court found that an award of permanent custody to LCCS was in the children's best interests under R.C. 2151.414(D)(1)(a)-(e).

{¶ 17} In support of its finding under R.C. 2151.414(E)(1), the court indicated that appellant failed to complete her case plan services or make the necessary changes for the children's safety. In particular, the court referenced appellant's attitude toward M.W. and noted the fact that she communicated with M.W. following the completion of her domestic violence classes. Consequently, the court found that appellant had failed to internalize the concepts of domestic violence and safety taught in the classes.

{¶ 18} As to substance abuse services, the court found that appellant participated in programs with eight providers (SASI, TASC, True Thoughts, the Rainbow Clinic, the Zepf Center, Arrowhead, UMADOP, and New Concepts), but failed to successfully complete any of the programs. The court also noted that appellant tested positive for a variety of opiates, as well as cocaine, alcohol, and benzodiazepine, during the pendency of the case.

{¶ 19} Regarding appellant's housing situation, the court found that appellant was evicted from her prior residence in April 2017 due to nonpayment of rent, and was currently living with J.E.

{¶ 20} In support of its finding under R.C. 2151.414(E)(2), the juvenile court reiterated the fact that appellant had tested positive for a variety of illicit drugs, and

7.

refused to submit to urine screens upon request because she knew she would be "dirty." Given the fact that appellant tested positive for cocaine as recently as August 2017, and failed to provide urine screens in September and October 2017, the court concluded that appellant had not attained sobriety for any significant length of time. The court also found that appellant had been diagnosed with major depressive disorder and generalized anxiety disorder. Given these substance abuse and mental health issues, the juvenile court concluded that appellant could not provide an adequate home for the children within one year.

{¶ 21} Ultimately, the court found that the children could not be placed with either parent within a reasonable time and should not be placed with either parent, and that an award of permanent custody to LCCS was in the children's best interest. Thus, the court granted LCCS's motion for permanent custody, thereby terminating appellant's parental rights in the children. Appellant's timely appeal followed.

## B. Assignments of Error

{¶ 22} On appeal, appellant presents the following assignments of error for our review:

> 1. The finding that the [children] could not be placed with appellant within a reasonable time was against the manifest weight of the evidence.

8.

2. Lucas County Children Services failed to make reasonable efforts when it failed to place the [children] with a family member in legal custody.

3. Lucas County failed in its duty to properly investigate the allegations of sexual abuse of the child and it was not in the best interest of the child to reside with the [relative] caregiver.

4. The trial court made [reversible] error when it considered the out of court testimony of a three year old child.

5. Lucas County Children Services improperly interfered with a criminal investigation that they had no personal information about and caused mother to be arrested.

6. Appellant received ineffective assistance of counsel when her trial attorney failed to request any of the medical records from any alleged doctor appointments in regards to the alleged sexual abuse of the child.

## II. Analysis

### A. Manifest Weight

{¶ 23} In her first assignment of error, appellant argues that the juvenile court's finding that the children could not and should not be placed with her within a reasonable time was against the manifest weight of the evidence.

{¶ 24} "A trial court's determination in a permanent custody case will not be reversed on appeal unless it is against the manifest weight of the evidence." *In re A.H.*, 6th Dist. Lucas No. L-11-1057, 2011-Ohio-4857, ¶ 11, citing *In re Andy-Jones*, 10th Dist. Franklin Nos. 03AP-1167, 03AP-1231, 2004-Ohio-3312, ¶ 28. In conducting a review on manifest weight, the reviewing court "weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997); *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 17.

{¶ 25} We recognize that, as the trier of fact, the trial court is in the best position to weigh the evidence and evaluate the testimony. *In re Brown*, 98 Ohio App.3d 337, 342, 648 N.E.2d 576 (3d Dist.1994). Thus, "[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts." *Eastley* at ¶ 21, quoting *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, fn. 3, 461 N.E.2d 1273 (1984).

{¶ 26} Here, the juvenile court concluded that permanent custody to LCCS was warranted based on its finding under R.C. 2151.414(E)(1) that appellant failed to substantially remedy the conditions causing the children to be removed from the home

10.

despite reasonable case planning and diligent efforts by LCCS to assist her to remedy such conditions. The court also found that appellant's chronic mental illness and chemical dependency was so severe that it made her unable to provide an adequate permanent home for the children at the present time and, as anticipated, within one year of the hearing, under R.C. 2151.414(E)(2). Appellant asserts that these findings are against the manifest weight of the evidence.

{¶ 27} R.C. 2151.414(E) provides, in relevant part:

> If the court determines, by clear and convincing evidence, at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:

> (1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental

11.

utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties;

(2) Chronic mental illness, chronic emotional illness, intellectual disability, physical disability, or chemical dependency of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year after the court holds the hearing pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code.

{¶ 28} The issue in a reasonable-efforts determination is not whether the agency could have done more, but whether it did enough to satisfy the reasonableness standard in R.C. 2151.414(E)(1). *In re A.B.*, 6th Dist. Lucas Nos. L-12-1069 and L-12-1081, 2012-Ohio-4632, ¶ 25. "A 'reasonable effort' is an 'honest, purposeful effort, free of malice and the design to defraud or to seek an unconscionable advantage.'" *Id.*, quoting *In re Weaver*, 79 Ohio App.3d 59, 63, 606 N.E.2d 1011 (12th Dist.1992).

{¶ 29} As to her manifest weight argument, appellant contends that she has made significant progress on her case plan services as it relates to her substance abuse and mental health. Appellant notes that she has completed domestic violence services, and

12.

has internalized the lessons she learned through those services. Moreover, appellant asserts that she was consistent in her visitation of the children during the pendency of this case.

{¶ 30} Having reviewed the record of these proceedings in its entirety, we find that appellant's characterization of her progress is untenable. According to the testimony of LCCS caseworker Danielle Stroble, LCCS initially became involved in this case when it received reports of domestic violence between appellant and M.W. Stroble stated that the domestic violence was "severe," and included physical and verbal abuse at the hands of M.W.

{¶ 31} During Stroble's time with the family, J.G. and A.H. were placed with J.E. The placement with J.E. was terminated after LCCS learned that appellant was conducting unsupervised visits with the children when J.E. was not home. On one such occasion, a domestic violence incident occurred while appellant was spending the night with the children at her home. At that time, appellant was only allowed to visit the children when a LCCS-approved adult was present. LCCS subsequently removed the children from J.E. and placed them into foster care, at which point appellant became uncooperative with Stroble and failed to make continuous progress on her case plan.

{¶ 32} At the outset of LCCS's involvement with appellant, Stroble developed a case plan and provided services including domestic violence counseling, stable housing, substance abuse treatment, and a diagnostic assessment. Additionally, K.W. was

13.

provided services through Help Me Grow, and J.G. was offered counseling as a child who witnessed domestic violence. Stroble noted that appellant had already sought treatment for her substance abuse issues with the Zepf Center prior to becoming involved with LCCS. Stroble attempted to contact the Zepf Center regarding appellant's progress on her substance abuse treatment, but was unable to communicate with the Zepf Center because appellant revoked her release of information. Appellant was terminated from the Zepf Center in April 2016. On May 3, 2016, appellant entered substance abuse treatment at the Rainbow Clinic, where she was required to attend group sessions and meet with a counselor one-on-one. At this point, LCCS transferred this case from Stroble to another caseworker, Christina DeSilvis. DeSilvis worked with appellant from May 2016 until May 2017.

{¶ 33} Appellant did not successfully complete treatment at the Rainbow Clinic. According to DeSilvis, appellant was discharged from Rainbow Clinic in August 2016 due to positive urine screens and missed dosings. Thereafter, she transferred to another intensive outpatient program through TASC. Appellant was subsequently discharged from TASC in August 2016.

{¶ 34} In September 2016, appellant entered the methadone program at the Zepf Center, having previously been diagnosed with opioid dependence. According to appellant's mental health and drug/alcohol therapist, Deann Gossard, appellant's attendance was "spotty." Specifically, Gossard stated that appellant attended

14.

approximately 40 percent of her scheduled visits. Appellant's affiliation with the Zepf Center was unsuccessfully terminated in February 2017 due to positive urine screens. During her course of treatment with the Zepf Center, appellant tested positive on a number of occasions for fentanyl, morphine, codeine, hydromorphone, norfentanyl, methadone, heroin, cocaine, and alcohol. Gossard stated that appellant did not progress during her time at the Zepf Center.

{¶ 35} After being discharged from the Zepf Center for the second time, appellant informed DeSilvis that she spent a week at Arrowhead Behavioral Health in April 2017. However, DeSilvis was unable to confirm appellant's participation because appellant failed to sign the necessary releases. On April 24, 2017, appellant submitted a urine screen that tested positive for suboxone, fentanyl, benzos, and cocaine.

{¶ 36} On June 1, 2017, LCCS transferred this case from DeSilvis to another caseworker, Rick Mendieta. When Mendieta first became involved in this case, appellant reported that she was participating in substance abuse treatment services through UMADAOP. By the time Mendieta was able to meet with appellant in July 2017, appellant had been discharged from UMADAOP, and had transferred to New Concepts, where she remained for the duration of this case. Mendieta testified that appellant has not completed substance abuse services with New Concepts, and has failed to submit to his repeated requests for urine screens.

15.

**{¶ 37}** As to domestic violence, Stroble stated that LCCS received reports that, on one occasion in November 2015, M.W. pointed a firearm at appellant, J.G., and A.H. When Stroble asked appellant about the domestic violence incidents, appellant minimized the severity of the domestic violence and attempted to explain the domestic violence by pointing out that M.W. was drunk or drinking when it occurred. For her part, DeSilvis testified that appellant completed a domestic violence program through Project Genesis. However, DeSilvis stated that "the entire time [appellant] was involved with the program there were reports that she and [M.W.] were still together, living together up until [M.W.'s] sentencing, I believe, in September of 2016." DeSilvis went on to express concern over appellant's minimization of the domestic violence and impact it was having on the children.

**{¶ 38}** The foregoing testimony provided at the hearing on LCCS's motion for permanent custody establishes that appellant has failed to address the issues that prompted the removal of the children from appellant's home. Appellant's unsuccessful discharge from numerous substance abuse programs, her refusal to provide the necessary releases to allow LCCS to track her case plan progress, and her positive urine screens, demonstrate that appellant has not remedied her substance abuse issues. Moreover, appellant's continued involvement with M.W. demonstrates that she has not taken seriously the domestic violence issues.

16.

**{¶ 39}** In sum, we find that the juvenile court's finding that appellant has failed continuously and repeatedly to substantially remedy the conditions causing the children to be placed outside the home under R.C. 2151.414(E)(1) is supported by the evidence. Likewise, we conclude that the court appropriately found that appellant's chemical dependency is so severe that it makes her unable to provide an adequate permanent home for the children at the present time and within one year under R.C. 2151.414(E)(2). Therefore, we find that the juvenile court's decision was not against the manifest weight of the evidence.

**{¶ 40}** Accordingly, appellant's first assignment of error is not well-taken.

### B.  Reasonable Efforts

**{¶ 41}** In her second assignment of error, appellant contends that LCCS failed to make reasonable efforts to place the children in a relative placement.  Specifically, appellant asserts that LCCS failed to make reasonable efforts to place the children with maternal great grandmother, D.B., who appeared at the hearing and requested that she be awarded legal custody of the children.

**{¶ 42}** Relevant to appellant's argument, R.C. 2151.353(A) provides, in pertinent part:

> (A)  If a child is adjudicated an abused, neglected, or dependent child, the court may make any of the following orders of disposition:
>
> * * *

17.

(3)  Award legal custody of the child to either parent or to any other person who, prior to the dispositional hearing, files a motion requesting legal custody of the child or is identified as a proposed legal custodian in a complaint or motion filed prior to the dispositional hearing by any party to the proceedings.  A person identified in a complaint or motion filed by a party to the proceedings as a proposed legal custodian shall be awarded legal custody of the child only if the person identified signs a statement of understanding for legal custody that contains at least the following provisions:

(a)  That it is the intent of the person to become the legal custodian of the child and the person is able to assume legal responsibility for the care and supervision of the child;

(b)  That the person understands that legal custody of the child in question is intended to be permanent in nature and that the person will be responsible as the custodian for the child until the child reaches the age of majority.  * * *

(c) That the parents of the child have residual parental rights, privileges, and responsibilities, including, but not limited to, the privilege of reasonable visitation, consent to adoption, the privilege to determine the child's religious affiliation, and the responsibility for support;

(d) That the person understands that the person must be present in court for the dispositional hearing in order to affirm the person's intention to become legal custodian, to affirm that the person understands the effect of the custodianship before the court, and to answer any questions that the court or any parties to the case may have.

(4) Commit the child to the permanent custody of a public children services agency or private child placing agency, if the court determines in accordance with division (E) of section 2151.414 of the Revised Code that the child cannot be placed with one of the child's parents within a reasonable time or should not be placed with either parent and determines in accordance with division (D)(1) of section 2151.414 of the Revised Code that the permanent commitment is in the best interest of the child.

{¶ 43} At the outset, we note that D.B. has not filed a motion for legal custody of the children. Further, D.B. did not sign the required statement of understanding. "Pursuant to R.C. 2151.353(A)(3), a motion for legal custody must be filed prior to the dispositional hearing and should be read in conjunction with Juv.R.19, which requires that 'an application to the court for an order shall be by motion.'" *In re J.P.*, 12th Dist. Butler Nos. CA2015-08-160, CA2015-08-161, 2016-Ohio-7, ¶ 8. The requirement in R.C. 2151.353(A)(3) regarding the filing of a pre-hearing motion is mandatory. *See In re L.R.T.*, 165 Ohio App.3d 77, 2006-Ohio-207, 844 N.E.2d 914, ¶ 16 (12th Dist.) (stating

19.

that a juvenile court violates the mandatory requirements of R.C. 2151.353, as well as Juv.R. 19, 20, 22(E), and 34, when it grants legal custody in the absence of a motion); *see also In re Mayle*, 8th Dist. Cuyahoga Nos. 76739, 77165, 2000 Ohio App. LEXIS 3379, *26 (July 27, 2000) (finding that "compliance with the statutory mandates set forth in Chapter 2151 *et seq.* and the rules of juvenile procedure governing the filing and service of motions will be strictly enforced").

{¶ 44} Because D.B. did not file a motion for legal custody prior to the hearing on LCCS's motion for permanent custody in compliance with R.C. 2151.353, the juvenile court, as a matter of law, could not have awarded her legal custody. *In re J.P.* at ¶ 10. Accordingly, appellant's second assignment of error is not well-taken.

### C. Allegations of Sexual Abuse

{¶ 45} In appellant's third assignment of error, she argues that LCCS failed in its duty to properly investigate the allegations of sexual abuse of J.G. Relatedly, appellant argues that it was not in J.G.'s best interests to reside with the relative caretaker, B.G., because B.G.'s significant other, R.S., was regularly at the home and had previously been caught soliciting a prostitute.

{¶ 46} In response, LCCS argues that it conducted an appropriate investigation into appellant's allegations of sexual abuse, and concluded that the allegations were unfounded. Moreover, LCCS urges that appellant's best interest argument is irrelevant to the issue before us. According to LCCS, "the issue is not whether the children's

20.

placement is in the best interest but whether the children's best interest is served by a grant of permanent custody to children services."

{¶ 47} During the hearing, LCCS security officer Jeffrey Chesser testified concerning appellant's allegation of sexual abuse. Chesser is a security guard in LCCS's level one visitation room, where he supervises the visits between children and their parents. In his capacity as a security officer, Chesser supervised visits among appellant, J.E., and the children. During one such visit, Chesser received accusations of sexual abuse involving J.G. Chesser informed LCCS's intake department, and J.G. was taken away to be questioned privately about the accusation. When J.G. returned, Chesser overheard appellant and A.H. pleading with J.G. to reveal whether she had been abused. Speaking of J.G., Chesser testified that "every time she would be asked [whether she was abused] she would say no."

{¶ 48} DeSilvis further elaborated on LCCS's investigation into the allegations of sexual abuse during her testimony. She stated that there was "an allegation of [J.G.] being sexually abused in the home [B.G.] as well as her teenage daughter." According to DeSilvis, LCCS performed an investigation into the allegations in March 2017. DeSilvis reviewed J.G.'s medical records and interviewed J.G. about the allegations. J.G. made no report of sexual abuse. Consequently, DeSilvis testified that she had no concerns about B.G. as a caregiver for the children.

21.

{¶ 49} The sexual abuse allegations were also referred to an LCCS assessment worker, Todd Switala, who performed an investigation and ultimately concluded that the claims of sexual abuse were not supported by the evidence. DeSilvis testified that Switala met with J.G., B.G., and B.G.'s teenage daughter. According to DeSilvis, Switala reported that J.G. made no disclosures of sexual abuse.

{¶ 50} On this record, we find that LCCS conducted an appropriate investigation into appellant's allegations of sexual abuse. Apart from appellant's speculations, there was no evidence presented to substantiate the sexual abuse allegations, which even J.G. denied.

{¶ 51} Further, there is no merit to appellant's best interest argument. As noted by LCCS, the issue in this case is not whether the children's placement with B.G. was in their best interest. Rather, the issue is whether a grant of permanent custody to LCCS was in the children's best interest.

{¶ 52} In light of the foregoing, appellant's third assignment of error is not well-taken.

### D. J.G.'s Out of Court Statements

{¶ 53} In her fourth assignment of error, appellant argues that the juvenile court erred when it considered the out of court testimony of J.G., who was three-years-old at the time of her testimony and therefore incompetent to testify under Evid.R. 601(A), which states:

22.

Every person is competent to be a witness except:

(A) Those of unsound mind, and children under ten years of age, who appear incapable of receiving just impressions of the facts and transactions respecting which they are examined, or of relating them truly.

{¶ 54} Notably, appellant did not object to the admission of J.G.'s statements.[3] Therefore, appellant has waived all but plain error. Plain error is an obvious defect in the trial proceeding which affects substantial rights. *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002). Plain error does not exist unless it can be shown that but for the error, the outcome at trial "'clearly would have been otherwise.'" (Citation omitted.) *State v. Lang*, 129 Ohio St.3d 512, 2011-Ohio-4215, 954 N.E.2d 596, ¶ 108.

{¶ 55} Here, appellant contends that J.G.'s out of court statements constituted the only evidence that she was residing with J.E. while she was pregnant with K.W., in violation of her case plan. Assuming, arguendo, that the juvenile court's consideration of J.G.'s statements constituted error, appellant fails to meet her burden of demonstrating that the result of these proceedings would have different without the error. Indeed, LCCS's motion for permanent custody was supported by ample evidence of appellant's historic and ongoing substance abuse issues. This evidence, in and of itself, supports the

---

[3] Indeed, J.G.'s out of court statements were first explored *by appellant* during her cross-examination of Stroble.

23.

juvenile court's determination concerning permanent custody. That appellant improperly resided with J.E. was merely one of many factors supporting the court's decision.

{¶ 56} Because appellant has failed to demonstrate prejudice concerning the admission of J.G.'s out of court statements, we find that the trial court did not commit plain error in considering the statements. Accordingly, appellant's fourth assignment of error is not well-taken.

### E. LCCS's Alleged Interference in a Criminal Investigation

{¶ 57} In her fifth assignment of error, appellant argues that LCCS improperly interfered in the criminal investigation that followed the altercation between appellant and R.S. According to appellant, LCCS "called the Rossford police and gave them information about the alleged assault even though they were not present at the alleged assault." Because LCCS had no personal knowledge of the incident, appellant complains that it was improper for LCCS to contact the police.

{¶ 58} Appellant fails to articulate how the above argument is related to the trial court's decision on LCCS's motion for permanent custody. We agree with LCCS that "this assignment of error is simply irrelevant to the issue of permanent custody." Additionally, appellant's assertion of improper interference is misplaced in light of appellant's testimony that the Rossford police department contacted LCCS to determine whether appellant was supposed to be at B.G.'s home on the date of the incident.

{¶ 59} Accordingly, appellant's fifth assignment of error is not well-taken.

24.

## F. Ineffective Assistance of Counsel

{¶ 60} In her sixth and final assignment of error, appellant contends that she received ineffective assistance of trial counsel.

{¶ 61} In order to demonstrate ineffective assistance of counsel, appellant must satisfy the two-prong test developed in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). That is, appellant must show that counsel's performance fell below an objective standard of reasonableness, and a reasonable probability exists that, but for counsel's error, the result of the proceedings would have been different. *Id.* at 687-688, 694.

{¶ 62} Here, appellant's ineffective assistance argument rests on the assumption that trial counsel was incompetent for failing to request J.G.'s medical records in connection with her allegations of sexual abuse, or to further investigate R.S.'s criminal background. As discussed above in appellant's third assignment of error, there is no evidence in the record to substantiate appellant's sexual abuse allegations. Appellant fails to explain how the procurement of J.G.'s medical records would have provided such substantiation. DeSilvis testified that she reviewed J.G.'s medical records, and discovered no indications of sexual abuse. Moreover, trial counsel's failure to explore appellant's sexual abuse allegation and concern over the children's placement with B.G. is understandable because such issues relate to the children's placement and are irrelevant to the juvenile court's determination as to whether a grant of permanent custody to LCCS

25.

was in the children's best interests. Therefore, we find that trial counsel's failure to request J.G.'s medical records or further investigate R.S. was neither incompetent nor prejudicial.

{¶ 63} Because appellant has failed to establish ineffective assistance of counsel, we find her sixth assignment of error not well-taken.

### III. Conclusion

{¶ 64} For the foregoing reasons, the judgment of the Lucas County Court of Common Pleas, Juvenile Division, is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Arlene Singer, J.                  _____
                                             JUDGE
James D. Jensen, J.              

Christine E. Mayle, P.J.            _____
CONCUR.                                          JUDGE

                                               _____
                                             JUDGE

26.